02-09-315-CV
















 

 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00315-CV

 

 


 
 
 VALERIE MANTOS
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 CITY OF MANSFIELD
 
 
  
 
 
 
 
 APPELLEE
 
 


 

                                                                                                                             

------------

 

FROM THE 352ND DISTRICT COURT OF TARRANT
COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

          This is an appeal from a summary
judgment in favor of appellee the City of Mansfield in a suit by appellant Valerie
Mantos challenging the City’s acquisition of 105 acres of real property, and
subsequent sale of part of that property, on the ground that the City’s actions
violated the Texas Open Meetings Act.  Mantos brings fifteen issues challenging the grounds upon
which the City sought summary judgment. 
We affirm in part and reverse and remand in part.

Background Facts

          In May 2004, the City bought an
approximately 39-acre tract of land in Mansfield from Stephen and Sally Lockwood;
at the same time, the Lockwoods donated an adjacent 40-acre tract to the
City.  On the same day, the City also purchased
an adjacent 26-acre tract from Giovanni Homes. 
The City was planning to develop a sports complex on 40 acres of the
combined 105 acres.

          After taking bids to sell a 65-acre piece
from the larger 105-acre tract, the City decided to build the sports complex in
a different area; thus, it decided to sell not only the 65 acres but an
additional 16 acres to DCB Properties, the bid winner.  The City entered into a purchase agreement
with DCB Properties to sell 81 of the 105 acres on February 2, 2005.  The parties simultaneously entered into
agreements affecting the remaining 24 acres owned by the City:  (1) a license agreement allowing DCB
Properties to use the northeasternmost 12 acres for drainage purposes and (2) a
minimum guaranteed bid agreement in which DCB agreed that if the City chose to
bid the remaining 12 acres (the Guaranteed Bid Tract), DCB would submit a minimum
bid of $3.25 per square foot.

          The City passed a final ordinance on
March 14, 2005 approving the sale. The closing occurred on May 20, 2005.  At closing, DCB assigned its rights as buyer
under the contract to Water Street Development Partners, L.P.

          The City offered the
Guaranteed Bid Tract for bid and declared Water Street Development the winning
bidder on March 13, 2006.  The City
passed a final ordinance authorizing the City manager to execute documents
necessary to convey the Guaranteed Bid Tract on April 10, 2006.  But according to the summary judgment
evidence, Water Street Development refused to close under the contract.

          Also in 2006, the City
began working on a proposed economic development agreement for the 81 acres
that it had conveyed to Water Street Development.  The City eventually entered into an economic
development agreement affecting the property that included $63,000,000 in tax
incentives.

          Mantos sued the City on May 1, 2008
contending that all of the transactions involving the City’s acquisition and
subsequent sale of “all or any part of” the 105-acre tract are void for
violations of the Texas Open Meetings Act. In her second amended petition, she
requested a declaratory judgment that (1) the City’s agendas from May 10, 2004
through August 11, 2008 “were insufficient to properly apprise the public of
the subject matter of its meetings,” (2) the City’s invocation of exceptions to
the Open Meetings Act in executive sessions from May 10, 2004 to August 11,
2008 “were invalid such that its reliance thereon was unlawful,” and (3) any
actions taken by the City not posted on any agenda are void.  She also requested a writ of mandamus
ordering the City “to stop, prevent, or reverse any and all actions taken in
violation of [the Open Meetings Act,] including but not limited to the acquisition/disposition of the 105-acre
land transaction, or any portion thereof, as well as the development
agreement purporting to grant $63,000,000 in incentives,” and a writ of
mandamus ordering the City to immediately release for in camera inspection all
agendas or tape recordings for meetings or executive sessions that Mantos
claims were held in violation of the Open Meetings Act.  [Emphasis added.]

          The City moved for summary judgment,
alleging that Mantos’s claims as to the acquisition and subsequent sale and
development of the 105-acre tract are barred because they were validated by
section 51.003 of the government code. Alternatively, the City argued that
Mantos’s claims are barred by laches; that Mantos lacks standing to challenge
the constitutionality of the City’s conveyance of property to a third-party
developer; that if Mantos’s claims are not time-barred, she is limited to
challenging only those actions taken by the City Council; that even if the
City’s actions at the January 24, 2005 meeting violate the Open Meetings Act,
the conveyances are not invalid because they were subsequently ratified by
ordinance in open session according to a properly posted agenda; and that the
January 24, 2005 agenda was proper as a matter of law.

          The trial court granted summary
judgment to the City but did not specify the grounds.  Because the summary judgment motion did not
address Mantos’s claims about voiding the economic development agreement, the
City moved to sever those claims from the claims about the 105-acre tract.  Accordingly, the trial court severed the economic
development agreement claims from Mantos’s claims “related to [the City’s]
acquisition, purchase, sale or other disposition of all or a portion of” the 105-acre tract, thus making the summary
judgment final and appealable.[2]  [Emphasis added.]

Fundamental
Error

          In her first issue,
Mantos contends that the trial court committed fundamental error by granting
the motion for summary judgment because the disposition of this litigation
“directly and adversely affects the public interest generally.”  Fundamental error exists “in those rare
instances in which the record shows the court lacked jurisdiction or that the
public interest is directly and adversely affected as that interest is declared
in the statutes or the Constitution of Texas.”  Wal-Mart Stores, Inc. v. Alexander, 868 S.W.2d 322, 328 (Tex. 1993).  Other than authority about
the purpose and important public policy underpinning the Open Meetings Act,
Mantos has cited nothing indicating that summary judgment is a procedure
unavailable to a defendant in an Open Meetings Act case.  See,
e.g., Save Our Springs Alliance, Inc. v. City of Dripping Springs, 304
S.W.3d 871, 888–91 (Tex. App.––Austin 2010, pets. denied) (affirming summary
judgment on Open Meetings Act claims). 
Accordingly, we overrule appellant’s first issue.

Validation Statute

          In her third through fifth issues,
Mantos claims the trial court erred by granting summary judgment on the ground
that all of the City’s actions complained of in her petition are validated by
section 51.003 of the local government code.[3]

          Section 51.003 of the local government
code provides as follows:

(a) A governmental
act or proceeding of a municipality is conclusively presumed, as of the date it
occurred, to be valid and to have occurred in accordance with all applicable
statutes and ordinances if:

 

(1)   
the third anniversary of the effective date of the
act or proceeding has expired; and

 

          (2) a lawsuit
to annul or invalidate the act or proceeding has not been filed on or before
that third anniversary.

 

          (b) This section does not apply to:

 

          (1) an act or
proceeding that was void at the time it occurred;

 

          (2) an act or
proceeding that, under a statute of this state or the United States, was a
misdemeanor or felony at the time the act or proceeding occurred; [or]

 

          . . . .

 

          (4) an
ordinance that, at the time it was passed, was preempted by a statute of this
state or the United States, including Section 1.06 or 109.57, Alcoholic
Beverage Code.

 

Tex. Loc. Gov’t Code Ann. § 51.003 (Vernon 2008).

          The legislature has the power to ratify
any act that it had the power to authorize. 
City of Murphy
v. City of Parker, 932 S.W.2d 479, 481 n.1 (Tex. 1996); City of Alton v. City of Mission, 164
S.W.3d 861, 868 (Tex. App.––Corpus Christi 2005, pet. denied).  “[C]urative statutes are liberally construed
only to effectuate the intent of the legislature in enacting them and not to
other ends.”  City of Waco v. City of McGregor, 523
S.W.2d 649, 652 (Tex. 1975); City of
Alton, 164 S.W.3d at 868.

          According to the City, section 51.003
applies without exception to Mantos’s claims about the sale or disposition of
the 105 acres.  If none of the exceptions
apply, because Mantos’s suit was filed on May 1, 2008, any act or proceeding of
the City occurring before May 1, 2005 would be conclusively presumed valid.  See
Tex. Loc. Gov’t Code Ann. § 51.003.

Acquisition of 105 Acres and Sale
of 81 Acres

          The summary judgment record shows that
the events leading to the City’s acquisition of the 105 acres occurred in 2003
and 2004; those transactions closed on May 12, 2004.  The City began reviewing alternate sites for
the sports complex in 2004 and 2005.  The
City entered into the contract with DCB in February 2005 and authorized the
sale by final ordinance in March 2005. 
Thus, the only event occurring within three years of the date of the
filing of Mantos’s suit was the actual closing of the sale on May 20, 2005.

          Closing
after May 1, 2005

          Mantos contends that because the
actual closing occurred after May 1, 2005, the sale of the 81 acres is not
validated by section 51.003.  However,
the ordinance authorizing the City staff to sign the closing documents was
passed on March 14, 2005.  The Open
Meetings Act applies to a proceeding or meeting only if it involves “formal
action or deliberation between a quorum of
members.”  Beasley v. Molett, 95 S.W.3d 590, 606 (Tex. App.––Beaumont 2002, pet.
denied); see Tex. Gov’t Code Ann. §
551.001(4) (Vernon Supp. 2010), § 551.002 (Vernon 2004).  Here, there is no evidence that the closing
involved any formal action or deliberation beyond what had already been
authorized in the ordinance, which is presumed valid by operation of section
51.003 if no exceptions apply.  See City of Cresson v. City
of Granbury, 245 S.W.3d 61, 69 (Tex. App.––Fort Worth 2008, pet. denied).  Accordingly, we will review whether any of
the exceptions apply here.

          Void
at time it occurred

          Mantos argues that this first
exception applies so that the City’s actions prior to May 1, 2005 are not
validated pursuant to section 51.003(a). 
See Tex. Loc. Gov’t Code Ann.
§ 51.003(b)(1).[4]  Mantos’s claims, however, are based on
violations of the Open Meetings Act, which are voidable, not void or void ab
initio.  Tex. Gov’t
Code Ann. § 551.141 (Vernon 2004); Argyle
ISD ex rel. Bd. of Trustees v. Wolf, 234 S.W.3d 229, 247 (Tex. App.––Fort
Worth 2007, no pet.). 
Nevertheless, Mantos contends that the City’s actions are void as
violative of chapter 272 of the local government code (the competitive bidding
statute), Article III, section 52 and Article XI, sections 5 and 6 of the Texas
Constitution, the Public Charitable Trust doctrine, the Mansfield City Charter,
and sections 3.13 and 12.05 of the penal code. 
But Mantos provides no argument, authority, or evidence supporting her
contention that the City’s actions violated any of these provisions such that
they are void or otherwise outside the scope of the validation statute; thus,
she has waived any complaint that the City’s pre-May 1, 2005 actions are void
for any other reason.  See Tex. R. App. P. 38.1(i); Clifton v. Walters, 308 S.W.3d 94, 99
(Tex. App.––Fort Worth 2010, pet. denied). 
Accordingly, we conclude and hold that, as to the City’s acquisition of
the 105 acres and subsequent sale of 81 of those acres, the trial court did not
err by granting summary judgment on the ground that those actions were
validated by section 51.003 of the local government code.  We overrule Mantos’s third through fifth
issues as to the complaints in her second amended petition related to the
City’s acquisition of the 105 acres and subsequent sale of the 81 acres.

Contract to Sell Guaranteed Bid
Tract

          Mantos filed her second amended
petition while the City’s motion for summary judgment was pending.  In her second amended petition, Mantos claims
that the City violated the Open Meetings Act on March 13, 2006, March 27, 2006,
and April 10, 2006 by posting insufficient agenda items and by improperly
breaking into executive sessions to discuss matters related to the sale of the
Guaranteed Bid Tract to Water Street Development.  Because these complained-of actions relate to
the “sale or other disposition of all or a portion of” the 105-acre tract––and
because these actions occurred after
May 1, 2005 and thus are not validated by section 51.003––we must determine
whether any of the City’s other grounds for summary judgment are valid as to Mantos’s
claims regarding these actions.

Laches

In
her sixth and seventh issues, Mantos challenges the summary judgment on laches
grounds.  The City claimed that Mantos
waited too long to file her suit and, thus, the City as well as third parties
were harmed because they changed their positions in reliance on the delay.

Two
essential elements of laches are (1) unreasonable delay by one having legal or
equitable rights in asserting them and (2) a good faith change of position by
another to his detriment because of the delay. 
Rogers v. Ricane
Enters. Inc., 772 S.W.2d 76,
80 (Tex. 1989).  In the
absence of some element of estoppel, the doctrine of laches does not bar an
action before the statute of limitations has run.  Delta
County Levee Improvement Dist. No. 2 v. Leonard, 516 S.W.2d 911, 913 (Tex. 1974),
cert. denied, 423 U.S. 829 (1975); Rivera v. City of Laredo, 948 S.W.2d
787, 793 (Tex. App.––San Antonio 1997, pet. denied).  Mantos filed suit less than two years after
the March and April 2006 meetings that she complains of; thus, at least as to
those alleged Open Meetings Act violations, she did not wait an unreasonable
amount of time to sue.  See Rivera, 948 S.W.2d
at 793.  We sustain Mantos’s sixth
and seventh issues but only as they relate to Mantos’s claims regarding the
City’s March and April 2006 Council meetings about the sale of the Guaranteed
Bid Tract.

Remaining Grounds for Summary
Judgment

In
her eighth through fifteenth issues, Mantos challenges the remaining grounds
upon which the City sought summary judgment.

First,
the City alleged that to the extent Mantos was asserting a taxpayer standing
claim as to the constitutionality of the conveyance of any of the property to a
third party, she had no standing to do so. 
However, Mantos states in her brief that there is no such claim in her
second amended petition, and the City agrees. 
Therefore, summary judgment on the City’s claims related to the sale of
the Guaranteed Bid Tract would not have been proper on that ground.

The
City also argued that to the extent Mantos was complaining about actions taken
that were not posted on any agenda, she could only complain about City Council
actions and not actions by any particular individual or third party.  Because Mantos’s
claims about the March and April 2006 Council meetings concern allegedly
insufficient agenda items and improper executive sessions, the City’s summary
judgment ground regarding actions by parties other than the City Council as a
whole likewise does not apply to those claims.

The
City’s remaining grounds for summary judgment apply only to the January 24,
2005 City Council meeting and were alternative grounds to the validation
statute ground.  Accordingly, they
likewise cannot apply to alleged violations at the March and April 2006
meetings complained of in the second amended petition.  We therefore sustain Mantos’s eighth through
fifteenth issues in part, but solely as to her claims pertaining to the March
and April 2006 Council meetings.

Conclusion

          Having determined that none of the grounds
raised by the City support the trial court’s summary judgment as to Mantos’s
claims of alleged Open Meetings Act violations in the March and April 2006 City
Council meetings, and having sustained her third through fifteenth issues in
part as to those claims only, we reverse and remand the summary judgment solely
as to those claims.  Having overruled all
of Mantos’s remaining dispositive issues, we affirm
the remainder of the summary judgment as to her complaints about the City’s
acquisition of the 105 acres and subsequent sale of 81 of those acres.

 

 

                                                                             
 
 
 
 
 
 
 
 TERRIE LIVINGSTON

                                                                             
 
 
 CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.; MCCOY
and MEIER, JJ.

 

DELIVERED:  February 10, 2011











[1]See Tex. R. App. P. 47.4.





[2]See Diversified Fin. Sys., Inc. v. Hill,
Heard, O’Neal, Gilstrap & Goetz, P.C., 63
S.W.3d 795, 795 (Tex. 2001).





[3]Mantos’s
second issue complains that the trial court erred by failing to sustain her
objections to the City’s summary judgment evidence; however, because our
disposition of the third issue would be the same even if the trial court
sustained all of the objections––and because our determination of the propriety of
the summary judgment is based almost entirely on the application of the law to
Mantos’s pleadings––we need not address that issue.  See
Tex. R. App. P. 47.1; Reynolds v. Murphy,
188 S.W.3d 252, 259 (Tex. App.––Fort Worth 2006, pet. denied), cert. denied, 549 U.S. 1281 (2007).





[4]Mantos had the
burden to produce summary judgment evidence raising a fact issue as to any
exceptions to the validation statute she contends are applicable.  See Zeifman
v. Nowlin, 322 S.W.3d 804, 808 (Tex. App.––Austin 2010, no pet.).